IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CYNTHIA JAGIELSKI,

    Plaintiff,                                    06cv1081

v.                                           **ELECTRONICALLY FILED**

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

**Memorandum and Order on Attorneys Fees**

  **I.  Introduction.**

On August 24, 2007, this Court entered judgment in favor of plaintiff and against defendant, and issued a Memorandum Opinion which stated in part:

> **V.    Remedy.**
>
> Plaintiff requests the Court to award retroactive benefits, with interests and attorneys fees, and to make a declaratory judgment that plaintiff's disability is permanent and award a measure of damages for future disability benefits in a lump sum.  The Court certainly agrees that retroactive benefits with interest is an appropriate remedy in this case, as is an award of attorneys fees, but will not enter a lump sum award for "front disability benefits."
>
> As far as attorneys fees, under ERISA, 29 U.S.C. § 1132(g)(1), the Court may, in its discretion, award attorney's fees to a prevailing party. There is no presumption that a successful plaintiff should automatically receive attorney's fees. *Ellison v. Shenango, Inc. Pension Bd.*, 956 F.2d 1268, 1273 (3d Cir. 1992); *McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc.*, 33 F.3d 253, 254 (3d Cir. 1994).
>
> In determining whether to award attorney's fees under section 502(g)(1), a district court must consider the following five factors: (1) the non-prevailing party's bad faith or culpability; (2) the ability of the non-prevailing party to satisfy an attorney's fee award; (3) the deterrent effect of an attorney's fee award on the non-prevailing party; (4) the benefit conferred on the members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983).  Factors 1-3 and 5 all weigh heavily in favor of an award of attorneys fees in this case, and factor 4 is a non-factor.  The Court therefore determines

>that plaintiff is entitled to attorneys fees for *all* of their work on this case.

>\* \* \*

>Additionally, the Court will direct . . . plaintiff to submit a petition for attorneys fees and supporting affidavit in accordance with the standard practices in this Court, and defendant will be given an opportunity to respond and to be heard at a hearing on attorneys fees.

Memorandum Opinion, August 24, 2007 (doc. no. 56), at 27-28.

On September 5, 2007, plaintiff submitted a motion for attorneys fees (doc. no. 58) with accompanying brief and affidavits, and defendant filed its response in opposition to attorneys fees (doc. no. 60), without affidavit.  Defendant argues that attorneys fees are not warranted in this case, and that if the Court awards attorneys fees, the hours expended by counsel were excessive.  On September 14, 2007, the Court heard argument on the petition for attorneys fees.  After carefully considering the foregoing, and in light of this Court's ruling on the motion for summary judgment and its intimate familiarity with the record in this case,[1] the Court will grant plaintiff's motion for attorneys fees and expenses, although some of the fee items will be reduced or eliminated.

**II. Propriety of An Award of Attorneys Fees.**

MetLife agrees that the test established by the United States Court of Appeals for the Third Circuit in *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983) governs the application for attorneys fees, but argues that only one of the four factors - that defendant has the ability to pay the fees - weighs in plaintiff's favor, and that the remaining four all militate in MetLife's favor. MetLife's position is, once again, not supported by the record.  This Court will address the *Ursic* factors, seriatim:

---

[1] In its Brief in Opposition, defendant agrees that counsel for plaintiff's hourly rates were reasonable. (doc. no. 60) at 7. This Court agrees that the hourly rates claimed by plaintiff's counsel are reasonable, in light of their well known experience and expertise.

(1) Non-prevailing party's bad faith or culpability.

MetLife asserts that it merely "disagreed with plaintiff's diagnosis of Fibromyalgia and Chronic Fatigue syndrome," and that its decision to terminate LTD benefits was because plaintiff failed to show a continuing disability and was reasonably based on the medical record before it. Brief in Opposition to Attorneys Fees at 3-4.  This benign characterization of its termination decision is wholly inaccurate.

First, it was not "plaintiff's diagnosis" that caused MetLife and its predecessor to pay disability benefits for fibromyalgia and chronic fatigue syndrome for ten years, but rather, the consistent  medical opinions, reports and diagnoses of plaintiff's treating physician and the IME performed in 1998 that supported plaintiff's disability.   Second, MetLife's decision to suddenly terminate plaintiff's disability was so fraught with procedural irregularities, inherent inconsistencies and unreasonable analyses of plaintiff Cynthia Jagielski's uncontradicted medical record that it generated a  "high degree of skepticism" and triggered the most elevated scrutiny short of de novo review.  Moreover, this Court found that "even under the traditional 'arbitrary and capricious' standard of judicial review . . . , a *more* arbitrary and capricious denial of disability benefits than the one before the Court is difficult to imagine." Memorandum Opinion, August 24, 2007 (doc. no. 56), at 1.

As the Court summarized in its Memorandum Opinion on Summary Judgment:

> These anomalies include: almost complete disregard of any medical evidence pre 2002, all of which consistently and unanimously supported her diagnoses of fibromyalgia and chronic fatigue syndrome; complete disregard of the disability determination by the SSA, which MetLife had been only too happy to honor and apply as a deduction from plaintiff's monthly LTD benefits; complete disregard of its own specialist's IME, which supported plaintiff's treating physicians diagnoses; selected disregard of Dr. Starz's affirmation of Dr. Kahn's and Dr. Bass's diagnoses of fibromyalgia and chronic fatigue syndrome, while "cherry picking" and relying on anything in

>his report that MetLife could use to support its denial of benefits; MetLife's cutting short, without any good cause or even decent explanation, the 45 days within which plaintiff could submit additional documentation; MetLife's refusal to have any medical professional examine the additional documentation it received a day or two after its in-house doctor "paper reviewed" selective portions of plaintiff's medical records from 2002 and 2003; and MetLife's sudden and unexplained termination of plaintiff's LTD benefits on July 1, 2003, on the flimsy grounds that "the medical information contained in your file [that is, *the exact same medical evidence that for ten years supported plaintiff's LTD claim*, and upon which MetLife and its predecessor paid her monthly benefits] no longer supports the eligibility for benefits under the Verizon LTD Plan."
>
>The last, but not the least, factor that compels judicial skepticism is the "finding" by MetLife's in-house doctor, Dr. Hopkins, adopted in whole by MetLife's "Procedure Analyst," that plaintiff was undeserving of LTD benefits because, although her long term treating physician and the specialist who performed the IME after physical examination concurred that plaintiff suffered from disabling fibromyalgia and chronic fatigue syndrome, Dr. Hopkins scoffed at their diagnoses because plaintiff's "fatigue, sleep disturbances, generalized pain, and trigger points can all be explained on a psychiatric basis without invoking the specter of 'fibromyalgia'" and because "FMS and CFS are not necessarily, in and of themselves, disabling disorders, and many people who carry these dx's overall do much better when they continue to work." Needless to say, neither Dr. Hopkins' fear of the "specter of fibromyalgia" nor the fact there may be "many people" with these diagnoses who manage to work constitute *admissible evidence* upon which a disability determination can *reasonably* be based.
>
>Several of these items, standing alone, may be sufficiently irregular as to invoke heightened arbitrary and capricious scrutiny. . . . *Cumulatively*, the procedural anomalies and substantive irregularities in MetLife's decision making process invite *great judicial skepticism* and demand application of the *least deferential* "heightened" arbitrary and capricious standard of review (i.e., short of de novo review but subject to very close scrutiny) to MetLife's termination of plaintiff's LTD benefits.

Memorandum Opinion, August 24, 2007 (doc. no. 56), at 23-25.

The Court finds that MetLife acted arbitrarily, capriciously, unreasonably and in bad faith in terminating plaintiff's LTD benefits.

(2) Ability of the non-prevailing party to satisfy an attorney's fee award.

MetLife states this is not an issue, and it has the ability to satisfy an attorney's fees award.

(3) Deterrent effect of an attorney's fee award on the non-prevailing party.

MetLife argues there can be no deterrent effect because it did nothing improper. Presumably MetLife concedes the converse – attorneys fees would have a deterrent effect if it had done something improper. Because the Court finds that MetLife acted arbitrarily, capriciously, unreasonably and in bad faith in terminating plaintiff's LTD benefits, it is sincerely hoped that an award of attorneys fees will have the desired deterrent effect in MetLife's future review of disability claims.

(4) Benefit conferred on the members of the pension plan as a whole. Although this Court initially found that this factor is not significant, upon further reflection, an award of attorneys fees will certainly have a benefit, albeit indirectly, to the members of the pension plan who have disability claims, in ensuring that their claims are given all due consideration with an emphasis on compensating deserving claimants for their disabilities.

(5) Relative merits of the parties' positions.

No need to rehash this factor; the entirety of this Court's Memorandum Opinion of August 24, 2007, makes it quite clear that MetLife's position was extremely weak, and plaintiff's extremely strong. The LTD benefits should have been continued, and the lawsuit should have been settled at the onset.

Because all of the *Ursic* factors weigh strongly in favor of plaintiff, this Court would no doubt be reversed if it denied attorneys fees. The Court finds, therefore, that attorneys fees are warranted and appropriate for counsel's efforts in this case.

### III. Amount of Attorneys Fees.

The Court disallows $540.00 for the work of Charles Pass, which this Court finds to be duplicative of other lawyers' work, and reduces the $6,480.00 fee for law clerks and paralegals by 50%, to $3,240.00, because "too many hands" touched the files to warrant full reimbursement for those fees. At the Court's request, plaintiff's counsel graciously withdrew the fees and costs associated with Court-ordered mediation. Thus, the Court will also disallow the $950.00 costs of mediation, as well as $6,600 counsel fees for the mediation. The expenses requested in the amount of $1,389.22 will be reduced by $950.00, for a total expense reimbursement of $439.22. Otherwise, the Court will grant the motion for attorneys fees and costs.

In reaching the above conclusion, the Court personally reviewed *every* item of the affidavit setting forth the hours billed, an exercise of which this Court is intimately familiar and well-experienced. The Court finds that the hourly rates and the number of hours billed (as recalculated) are reasonable, especially in light of the conduct of defense counsel for the duration of this litigation (leaving "no stone unturned," no matter how unreasonable). The Court further finds, after recalculation of the legal fees as set forth above, that the charges are neither redundant, excessive or unnecessary, and thus, the hours expended, as modified, were reasonable.

Accordingly,

**AND NOW, this 28th day of September, 2007**, the Court **HEREBY GRANTS** plaintiff's motion for attorneys fees and costs (doc. no. 58), and will enter an award of fees and costs in the following amounts:

| Attorney/ Staff | Hours | Rate | Lodestar |
| --- | --- | --- | --- |
| John Stember | 41.6[2] | $400 | $16,640.00 |
| Tybe A. Brett | 118.25 | $350 | $41,387.50 |
| Stephen M. Pincus | 12.3 | $300 | $3,690.00 |
| Law Clerks and Paralegals | | | $3,240.00 |
| Reduction for Counsels Mediation Fees | | | $6,600.00 |
| TOTAL LODESTAR | | | $58,357.50 |
| Plus Expenses 0f $439.22 | | | $58,796.72 TOTAL |

SO ORDERED
this 28th day of September, 2007

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: all ECF registered counsel

---

[2] At the hearing, counsel agreed to eliminate one hour from the 42.6 hours he initially requested.